UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIEL DWAYNE HILL | CIVIL ACTION |
| VERSUS | NO.   10-02121 |
| HORNBECK OFFSHORE SERVICES, INC. | SECTION   "N"   (3) |

## ORDER AND REASONS

Before this Court is the Motion to Compel Arbitration (Rec. Doc. 23), filed by Defendants Hornbeck Offshore Transportation, LLC and Hornbeck Offshore Operators, LLC. This motion is opposed by Plaintiff Daniel Dwayne Hill. (See Rec. Doc. 26). After considering the memoranda filed by the parties, the exhibits attached thereto, and the applicable law, the Court **GRANTS** this motion.

## I. BACKGROUND

Between 2007 and 2010, Plaintiff Daniel D. Hill ("Hill") accepted three Restricted Stock Unit ("RSU") offerings and two cash payments as part of an incentive program offered by his employer, Defendant Hornbeck Offshore Transportation, LLC ("Hornbeck"). (Rec. Doc. 23-2, Ex. B). The incentive agreements were all electronically viewed and signed by Hill, and contained similar arbitration clauses entitled "Mandatory Mediation and Arbitration Procedure." Referenced within these clauses and attached to the agreements, a document entitled "Exclusive Dispute Resolution Mediation and Arbitration Procedure" explained the arbitration agreement in

further detail.

During the course of his employment with Hornbeck, Hill was allegedly injured while working aboard two of its vessels on June 13, 2008 and again in late May of 2009. (Rec. Doc. 1 p. 2). Notably, on May 26, 2009, Hill signed an incentive agreement after the first and, perhaps, second accident. (Rec. Doc. 23-3 p. 11, Ex. B-4; See also Rec. Doc. 33-4, p.2). After the second accident, Hill entered into two additional agreements on May 10, 2010. (Rec. Doc. 23-3, p. 6, Ex. B-3; Rec. Doc. 23-3, p. 22, Ex. B-5). Hill has since brought negligence and unseaworthiness claims against his employer under the Jones Act and General Maritime Law, (Rec. Doc. 1 pp. 1, 3). Hornbeck now moves the Court to enforce the arbitration agreements executed by the parties. (Rec. Doc. 23 p. 1).

## II. LAW AND ANALYSIS

### A. Timeliness of the Motion to Compel

Hill submits that the Motion to Compel Arbitration should be denied as Hornbeck failed to comply with the February 9, 2011 deadline set for all motions directed at the question of jurisdiction or venue. (Rec. Doc. 26 p. 3). Hornbeck, however, argues that the motion is not subject to the deadline because it does not contend that the court is without jurisdiction or that venue is improper. (Rec. Doc. 33-2 p.2) (*citing Frank v. Am. Gen. Fin.*, 23 F.Supp.2d 1346, 1350 (S.D.Ala. 1998) ("even an order compelling arbitration does not under the FAA divest the court, state or federal, of jurisdiction")). Regardless, federal policy strongly advises the court to enforce valid arbitration agreements. Absent a more compelling reason than mere untimeliness of the filing, the Court's refusal to enforce a valid arbitration agreement would be ill-advised in light of this federal policy. *See United States v. Clipper Shipping Co., LTD.*, Civ. A. No. 93-2798, 1995

WL 131077, at *2 (E.D. La. Mar.23, 1995) ("[C]onsidering the strong federal policy favoring arbitration," the Court declined to hold that the failure to timely file "without more precludes an order compelling arbitration."). Hill has made no such showing. The Court will therefore entertain this Motion to Compel Arbitration as having been timely filed.

**B. The Arbitration Agreement**

The Federal Arbitration Act (FAA), which governs the enforcement of arbitration agreements in maritime transactions, reflects a strong federal policy favoring the arbitration process. *Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 2008105 (E.D. La. July 5, 2007). "Save upon such grounds as exist at law or in equity for the revocation of any contract," federal courts are required to compel arbitration where the parties are found to have entered into a contractually valid agreement to arbitrate. 9 U.S.C. §2. Notably, *employment contracts* of seamen are exempt from the FAA's reach. 9 U.S.C. §1.

When considering a motion to compel arbitration under the FAA, the court's inquiry consists of three steps. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, *Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54 (1985)*; Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Gaskamp*, 280 F.3d at 1073. Next, it will examine "whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the first two steps are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (*quoting JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir.2007)).

**1. Was there a valid agreement to arbitrate between the parties?**

Courts apply general principles of state contract law to resolve issues of contract formation. *Gaskamp*, 280 F.3d at 1073. While the parties agree that Louisiana law governs the contractual issues in the instant case, Hill disputes whether the "clickwrap" agreement[1] creates a legally enforceable obligation to arbitrate. (Rec. Doc. 26 p. 11). In the state of Louisiana, the law's favorable treatment of arbitration agreements "echoes the Federal Arbitration Act." *Aquillard* v. *Auction Mgmt. Corp.*, 908 So.2d 1 (La. 2005); *see also* La.Rev.Stat. §§ 9:4201, 9:4202. Moreover, state law also gives legal effect to both electronic contracts and signatures. *See* La.Rev.Stat. § 9:2607. Therefore, in the absence of fraud, misrepresentation, or deceit, one is bound under Louisiana law to the terms of a contract, signed electronically or otherwise. *See In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986).

Hill next argues that Louisiana has a public policy rejecting the enforcement of forum selection clauses in agreements with employees that is equally as strong as the FAA's preference for the enforcement of arbitration. (Rec. Doc. 26 p. 4). This argument is based on La. Rev. Stat. Ann. §23:921A(2), which, in relevant part, states that "any attempt" by an employer "to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void." However, this statute contains a notable caveat which exempts choice of forum clauses that are "expressly, knowingly, and voluntarily agreed to and ratified by the employee *after* the occurrence of the incident which is the subject of the civil or administrative action." *Id.* (Emphasis added).

---

[1] This is type of contract wherein an individual agrees to its terms through electronic means. It "appears on an internet webpage and requires that a user consent to its terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002).

Were the Court to treat arbitration agreements and forum selection clauses equally because they are functionally equivalent, the instant case would still fall within the exemption for post-injury agreements set forth in La. Rev. Stat. Ann. §23:921A(2). Hill signed arbitration agreements *after* he suffered the two injuries, which occurred on June 13, 2008 and May, 2009[2]. (Rec. Doc. 23-3 p. 6; Rec Doc. p. 14; Rec. Doc. p. 22; Rec. Doc. 33-4 p. 2).

Hill also contends that enforcement of the arbitration agreement is unconscionable. (Rec. Doc. 26 p. 11). "Where a party h[as] no power to negotiate a contract," state law permits courts to strike an unconscionable arbitration clause if it is found to be "unduly burdensome or extremely harsh." *Costanza v. Allstate Insurance Co.*, No. 02-1492, 2002 WL 31528447, at *5 (E.D.La. Nov.12, 2002). Louisiana courts have considered such factors as the clause's physical characteristics, its mutuality, and the bargaining strength of the respective parties. *See Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 971 So.2d 1257, 1266 (La.App. 3 Cir., 2007).

Here, there is no evidence that Hornbeck desired to deceive or mislead by including the arbitration agreement with financial matters or by burying it in the contract itself, as alleged by Hill. On the second page of each of the contracts, the arbitration agreements are set off as separate and distinctive clauses with bolded and italicized headings. Moreover, attached to each agreement signed by Hill, a document entitled "Exclusive Dispute Resolution Procedure" set forth the requirements of the arbitration provision in further detail. Whether Hill understood the terminology is simply irrelevant. As a principle of contracts, "[t]he law does not compel people to read or inform themselves of the contents of an instrument which they may choose to sign, but

---

[2] Much of Hill's argument appears to be mistakenly premised on the notion that all five of the arbitration agreements were signed before the occurrence of the two alleged injuries. The record indicates otherwise.

it holds them to the consequences in the same manner and to the same extent as though they had exercised those rights." *Costanza,* 2002 WL 31528447, at *5 (*quoting Gill v. Jim Walter Homes of La., Inc.*, 187 F.Supp.2d 618, 624 (M.D.La. 2002)). By signing the contracts, Hill represented that he "ha[d] reviewed this agreement and the Plan in their entirety, [he] had an opportunity to obtain the advice of counsel prior to executing this Agreement, and [he] fully underst[ood] all provisions of this Agreement and the Plan." (Rec. Doc. 23-3 p. 14). The agreement bound both parties and Hill was fairly compensated. Hill will not be released from his contractual obligation on the ready excuse that he chose not to read the contract or was ignorant of its terms.

**2. Does the dispute in question fall within the scope of the agreement?**

In order to determine the scope of the arbitration agreement, the court must examine whether its language is couched in a broad or narrow fashion. *Costanza,* 2002 WL 31528447, at *3; *see also Hornbeck Offshore Corp. V. Coastal Carriers Corp.*, 981 F.2d 752, 754-55 (5th Cir. 1993) If the language used in the agreement is broad, then the court should compel arbitration and allow any disagreement over its scope to be resolved in that arena. *Coastal Carriers Corp.*, 981 F.2d at 754-55 (*citing Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) and *Prudential Lines, Inc. V. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983)). If the language is couched narrowly, however, it is improper to order arbitration unless the claims are clearly covered under the agreement. *Coastal Carriers Corp.*, 981 F.2d at 755. In the event that the scope of the agreement is "fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Id.*(*citing Mar-Len of La., Inc. V. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)). "The weight of this presumption is heavy." *Id.* (*Quoting Parsons-Gilbane*, 773 F.2d at 636) (internal quotation marks omitted).

When an arbitration clause contains language such as "any dispute or difference between the parties," the Fifth Circuit has considered such agreements to fall within the "broad" category of arbitration agreements. *See Coastal Carriers Corp.*, 981 F.2d at 755; *Sedco*, 767 F.2d at 1144. In *Coastal Carriers*, the court held that claims of indemnity and contribution which arose from a barge accident were covered by a broadly worded arbitration clause that referred "any dispute arising between [the parties]" to arbitration. 981 F.2d at 754-55. In that case, the court struggled to imagine language broader than "any dispute." *Id.* at 755; *see also Sedco*, 767 F.2d at 1145. Moreover, it reasoned that when "an arbitration clause on its face appears broad enough to encompass the party's claims," the court is bound to compel arbitration. *Id.* (quoting *Life of American Ins. Co.*, *Aetna Life Ins. Co.*, 744 F.2d 409, 413 (5th Cir. 1984)).

In the instant case, Hill contends that his claims fall outside of the agreement's scope because it fails to mention either Jones Act or unseaworthiness claims, nor does it contain the terms "injury" or "accident." (Rec. Doc. 26 p. 14). However, the language of the agreement makes the inclusion of such specific terms unnecessary. In addition to disputes "arising out of or relating to this Agreement," the contract states that the "the Dispute Resolution Procedure shall be the sole and exclusive means for resolving any other covered dispute." (Rec. Doc. 23-3 p. 2). In the attached document, entitled "Exclusive Dispute Resolution Mediation and Arbitration Procedure," it is later explained that the agreement covers "any challenge to or controversy or claim arising out of or relating to your employment relationship with the company." (Rec. Doc. p. 7). It further states that "all possible claims or disputes are covered." (Rec. Doc. p. 7). Tort claims are expressly included. (Rec. Doc. p.7).

Similar to the "any dispute" language of the arbitration clause in *Coastal Carriers*, which

7

was found to have a broad scope, the language of the agreement *sub judice* apparently covered a wide spectrum of disputes and claims arising out of the specific agreement or Hill's employment relationship with Hornbeck. While the words "injury" or "accident" are not specifically used, the agreement explains that its broad scope covers tort claims which, of course, often arise out of injuries or accidents. Furthermore, as discussed infra, there is no unique policy reason not to compel arbitration of claims merely because they concern personal injury. Because the claims presented here arise out of injuries alleged to have occurred during the performance of Hill's employment, and thus his employment relationship with the company, whether the claims are covered is, in the least, fairly debatable and the issue should be accordingly submitted to arbitration.

**3. Are the claims rendered nonarbitrable by federal statute or policy?**

When a party argues that a valid arbitration agreement should not be enforced because it is contrary to public policy, that party has the burden of persuading the court. *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007). Otherwise, an agreement may be nullified by federal statute. *Gaskamp*, 280 F.3d at 1073. Notably, the employment contracts of seamen are exempt from the FAA's reach. 9 U.S.C. §1.

In the instant case, Hill asserts that it is against public policy to require his Jones Act and general maritime claims to be arbitrated. (Rec. Doc. 26, p.11). This policy argument can be easily dismissed. In fact, other than the Federal Arbitration Act's exemption for seamen's employment contracts, the Fifth Circuit has expressly found no unique public policy ground "to exempt seamen from the binding effect of pre-dispute contracts . . . to arbitrate Jones Act or general maritime law claims against their employer." *Terrebonne*, 477 F.3d at 285. Accordingly,

Hill fails to demonstrate any compelling public interest contrary to the general federal policy favoring enforcement of arbitration agreements.

In addition to being replete with employment references, Hill also argues that the employee-employer relationship was altered when he was awarded equity in the company. (Rec. Doc. 26 p. 6). Because the equity made him a "part-owner" of the company, he contends that the arbitration agreement should be considered void as part of his employment contract. (Rec. Doc. p. 7). Moreover, Hill purports to have been led to believe by his superiors that the compensation was given in lieu of raises. (Rec. Doc.26 p.7).

While an arbitration agreement is not required to be included in an actual employment contract, to be considered as part of such it must at least modify the terms of the seaman's employment or his status as an employee. See *Nunez*, 2007 WL 2008105, at \*5. For example, courts have found an arbitration agreement to be unenforceable when consent was required as a condition to being considered for employment. *In re Oil Spill by the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2010 WL 4365478, at \*4 (E.D.La. Oct. 25, 2010) (hereinafter referred to as "*Deepwater*"*)*. Because consent to the agreement was a mandatory condition for employment, the court reasoned that it was "difficult" to discern from an employment contract. *Id.*; compare *Nunez*, 2007 WL 2008105, at \*3-5 (holding that a post-injury arbitration agreement was not part of a employment contract when a seaman's continued employment was not conditioned upon its execution).

Unlike the mandatory agreement in the *Deepwater* case, Hill's decision to accept or reject the agreements had no bearing on his continued employment. While the equity that he received may have increased Hill's financial stake in the company's performance, his status as

9

an at-will employee, and the nature of his work, remained unaltered. Therefore, this argument is unpersuasive. Whether the arbitration agreements should be considered part of the employment contract if the incentives were given in lieu of raises is less clear. However, Hill fails to cite, and the Court is unaware of, any case law in support of that position.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that **Defendants' Motion to Compel Arbitration and Stay Litigation Pending Arbitration (Rec. Doc. 23)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this action closed for statistical purposes.

**IT IS FINALLY ORDERED** that the Court shall retain jurisdiction and that the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition; this order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this 30th day of June, 2011.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE